THE STATE v. SNEED, *Appellant.*

1. **Criminal Law : EVIDENCE.** The judgment reversed because of the improper admission in evidence of the threats and demonstrations of a mob against defendant, occurring shortly after the commission of the homicide for which he was on trial.

The State v. Sneed.

2. ———: DRUNKENNESS. Drunkenness is inadmissible in evidence on a criminal trial either to show that no crime was committed or to reduce its grade.

*Appeal from Jackson Criminal Court.*—JAMES K. SHELEY, ESQ., Special Judge.

REVERSED.

*Jenkins, Clark & Thomas* for appellant.

(1) The trial court committed error in allowing the witness, Falks, to state the threats and remarks made by the mob assembled at Sutherland's store soon after the arrest of defendant. In *State v. Jaeger*, 66 Mo. 180, it is said: "And the courts will hesitate long before they will say that the violation of a plain rule of evidence did not operate to the prejudice of the accused." See, also, *State v. Thomas*, 78 Mo. 327; *State v. Holmes*, 54 Mo. 153; *State v. Cox*, 65 Mo. 32; *McKnight v. State*, 6 Tex. App. 158; *State v. Owen*, 79 Mo. 619. (2) The court erred in refusing the instruction asked by defendant, that the jury be allowed to consider the question whether defendant was in such a state of mind, by reason of being drunk, as to be able to form a deliberate purpose necessary to constitute murder in the first degree. *Hopt v. People*, 104 U. S. 631; *Jones v. Commonwealth*, 75 Pa. St. 403; *Kelly v. Commonwealth*, 1 Grant, 484; *Keenan v. Commonwealth*, 44 Pa. St. 55. (3)· There was no evidence of any premeditation or deliberation, and from the simple act of killing, the law presumes murder in the second degree, and the court should have instructed the jury on murder in the second degree. *State v. Testerman*, 68 Mo. 408; *State v. Holme*, 54 Mo. 153; *Craft v. State*, 3 Kas. 453; *State v. Ellis*, 74 Mo. 211; *State v. Robinson*, 73 Mo. 308; *State v. Banks*, 73 Mo. 592; *State v. Curtis*, 66 Mo. 13; *State v. Bryant*, 55 Mo. 75.

*B. G. Boone*, Attorney General, for the state.

(1) There was no evidence to justify an instruction for murder in the second degree, or a lower grade of homicide. The defendant was guilty of the crime for which he was tried and convicted, or nothing. *Stale v. Collins*, 81 Mo. 652. (2) It was proper, under the circumstances, for the prosecuting attorney to ask the witness, Parks, how and why the defendant came to say that he killed Loomis in self-defence. The verdict was offered not to show the words or actions of the mob, but to show why defendant made the pretext that his action was in self-defence. The technical words used in the instructions given by the court were properly defined. *State v. Thomas*, 78 Mo. 338. (3) The instruction given in regard to drunkenness of defendant not extenuating the crime, was proper, and was all that our court authorizes upon the subject. *State v. Hundley*, 46 Mo. 415; *State v. Dearing*, 65 Mo. 530; *State v. Edwards*, 71 Mo. 312; *State v. Ramsey*, 82 Mo. 137.

HENRY, C. J.—Defendant was indicted in the criminal court of Jackson county for the murder of C. H. Loomis, on the twenty-sixth of July, 1884. He was tried and convicted of murder in the first degree at the October term of said court, 1884, and has appealed from the judgment. The evidence for the state tended to prove the crime with which he is charged, but the first witness for the state testified as follows : "Sneed was drunk at the time ; was quite stupid—did not realize what he had done. The only remark he made after the shooting was in answer to the inquiry : 'why he did it.' He replied : 'I did it in self-defence. He had a knife in his hand and was trying to kill me. If you will go and stretch his hand out you will find a knife in his hand. All I want is justice.'" On re-direct examination, this witness said : "It was at Southerlands grocery store a few

minutes after the shooting that Sneed said he did it in self-defence." The prosecuting attorney then asked the witness the following question: "How came Sneed to say he did it in self-defence, and when?" The court overruled an objection, and the witness answered as follows: "It was at Southerland's grocery store, when the crowd was about to hang him. Some said, 'let's hang him, let's kill the scamp.' Some one produced the rope which was shown there a while. It was not used for want of a leader. I believe if any one had thrown it around Sneed's neck he would have been swung up. This was during that excitement." On re-cross-examination, this witness said: "Sneed made the statement I have mentioned at Southerland's grocery store in a very few minutes after the shooting—not more than ten minutes. *There had been no threats made when Sneed said in answer to the question 'why he killed the man?' that he did it in self-defence. This was before the crowd gathered. There were no threats made until the crowd gathered.*" The defendant then moved the court to exclude the evidence with regard to threats made by the crowd, and all that was said about hanging, and all that was said by the witness in that connection. This motion was overruled, and therein we think the court committed manifest error.

The only theory upon which such testimony could possibly be admitted, if at all, is that indicated by the very form of the question propounded by the prosecuting attorney, viz: to show that Sneed claimed that he acted in self-defence in consequence of the demonstrations made by the mob, and not that there was really any foundation for such a statement by him. Waiving a decision of that question, for that is not the one before us, it clearly appears upon the re-cross-examination of this witness, that when Sneed claimed that he acted in self-defence, there was no crowd there; there had been no threats of violence, no hostile

demonstrations made by the mob; and the statements stand as naked declarations of the opinions of those who composed the mob, that the defendant was guilty of murder. To admit such testimony is to permit a jury to determine the guilt or innocence of the accused, not upon the legitimate evidence in the cause only, but to take into consideration also the state of public opinion upon the subject. The learned special judge must have overlooked the testimony of this witness on his cross-examination, showing that Sneed's statement could not possibly have been induced by the remarks and demonstrations of the mob which all occurred after he had made the statement. The defendant complains that no instruction with respect to murder in the second degree was given; and testimony which it is claimed warranted such an instruction is that of the state's first witness, and others, as to the drunken condition of the accused when he killed Loomis.

The court holds that evidence of that character is wholly inadmissible, either to show that no crime was committed, or to reduce its grade from murder in the first degree to murder in the second. On this point I differ from my associates, and think that the great weight of authority as well as reason is in favor of the contrary doctrine. For the errors committed by the court in not excluding the statements of the witness with regard to the performance of the mob and their threats and demonstrations against Sneed, the judgment is reversed and the cause remanded. Sherwood and Black, JJ., concur. The other judges dissent.